ORRIN A. TORRY, Respondent, *v.* ABRAM M. BLACK,
Appellant.

The statutory guardian of an infant in whom an estate in lands becomes vested (1 R. S., 718, § 5), has no power to commit waste by cutting and removing timber from the land, except for necessary repairs of buildings (2 R. S., 153, § 20), and an assent by the guardian to such cutting and removal by another, is no defence in an action of trespass brought against him therefor.

The guardian, however, has a right to receive for the benefit of the infant the proceeds of any timber so cut; and where, with his assent, the proceeds are applied by the trespasser to the payment of taxes upon, or debts against the infant's estate, this may be proved in mitigation of damages.

The guardian appointed by a surrogate upon the application of an infant

over fourteen years of age (2 R. S., 150, § 4), has power, for a valuable consideration and acting in good faith, to release and discharge a claim for trespass upon the lands of his ward.

A release executed by such a guardian under seal, expressing a valuable consideration, is *prima facie*, valid and effectual, and if the ward, after becoming of age, seeks to impeach it, the burden is upon him to show that it was not made in good faith but in fraud of his rights.

*Torry* v. *Black* (1 N. Y. S. C. [T. & C.], 42) reversed.

(Argued April 24, 1874; decided September 22, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 1 N. Y. S. C. [T. & C.], 42.)

This was an action for trespass for cutting and carrying away wood and timber from plaintiff's lands.

In 1851 the father of the plaintiff died intestate, leaving a large real estate. He left surviving him a widow and the plaintiff, who was his only heir, then about one year old. The defendant was the grandfather of the plaintiff, and he took out letters of administration on the estate of plaintiff's father. The grandfather, after taking out letters of administration, and between the years 1851 and 1866, cut and carried away a large quantity of timber growing on the land that descended to the plaintiff. The plaintiff, on attaining his majority, brought this action to recover damages for such unlawful cutting and carrying away.

The defence set up in the answer is, that the timber was cut with the consent and approval of plaintiff's mother, who was his guardian and entitled to dower in said premises, and that he afterward settled with her for the said timber and was released by her from all claims therefor.

On the trial, the defendant offered to prove that the timber was cut with the assent of the guardian. The evidence was objected to and the objection was sustained and defendant's counsel excepted.

After plaintiff became fourteen years of age, and on the 14th March, 1867, upon his petition, his mother was duly appointed by the surrogate his general guardian.

Defendant offered in evidence a release executed by her and defendant, of which the following is a copy:

"SCHEDULE A.

"Mrs. Mary J. Wiborn, general guardian of Orrin A. Torry, and in her own behalf as the widow of the late Orrin D. Torry, deceased, and Abram M. Black, having this day accounted and settled all matters pertaining to the estate of Orrin A. Torry's real and personal estate, as well as for all moneys raised by the said Abram M. Black as special guardian for the mortgage of real estate, pursuant to the order of the County Court of Onondaga county, and expended in the defence of the title to the property of the said Orrin D. Torry, deceased, received from Dan. Torry, deceased, by will or otherwise, and all other claims and demands which the said Orrin A. Torry has or may have against said Abram M. Black, arising or growing out of said estate of Daniel Torry, deceased, and all claims which the said Abram M. Black has or may have against the said Orrin A. Torry and Mary J. Wiborn, and all claims and demands which the said Mary J. Wiborn has or may have against said Black on account of property or money received from or growing out of said estate of Orrin D. Torry by virtue of said mortgage, pursuant to the order of the court or otherwise, which order was made or granted in or about the month of February, 1858.

"Now, therefore, for a valuable consideration paid by each of said parties to the other, it is mutually agreed that all said claims and demands by either party against the other be and the same are hereby fully settled, satisfied, paid and discharged, and each party hereby releases and discharges the other, and all of said claims are satisfied and discharged.

"Witness our hands and seals this 10th day of August, 1867.

"MARY J. WIBORN,      [L. S.]
"*General Guardian for Orrin A. Torry, a Minor.*

"ABRAM BLACK,      [L. S.]
"*Administrator Estate O. D. Torry, deceased,*
*and Guardian of Mary O. Torry,*
*Widow of O. D. Torry, deceased.*"

This was objected to by plaintiff and excluded, to which ruling defendant excepted.

Defendant also offered to show that he had applied a portion of the money received for wood to pay taxes on the lot and for the benefit of the plaintiff, as an equitable set-off, and in mitigation of damages. Objected to by the plaintiff. Objection overruled and plaintiff duly excepted.

*Geo. N. Kennedy* for the appellant. It was proper for defendant to set up as an equitable defence that the money he received was expended for the benefit of plaintiff in paying taxes on his lands. (Code, §§ 69, 150; *Zenia Branch Bk.* v. *Lee*, 2 Bosw., 694; *Cramer* v. *Burton*, 60 Barb., 216.)

*W. H. Gifford* for the respondent. Plaintiff's mother had no power to permit defendant to commit the waste in question. (*Jackson* v. *Cowes*, 7 Cow., 36; *Combs* v. *Jackson*, 2 Wend., 153; *Holmes* v. *Seeley*, 17 id., 75, 78; Will. on Exrs., 444; 2 Kent's Com., [marg. pag.] 223, 224; *Genet* v. *Talimadge*, 1 J. Ch., 561, 564; *Jackson* v. *Sears*, 10 J. R., 435; *White* v. *Parker*, 8 Barb., 53; *Byrne* v. *Van Hoesen*, 5 J. R., 66; *Beecher* v. *Crouse*, 19 Wend., 306; *Sylvester* v. *Ralston*, 31 Barb., 286; Will. on Exrs., chap. 6, p. 449; *Field* v. *Schieffelin*, 7 J. R., 150, 154; *Hazzard* v. *Rowe*, 11 Barb., 22; *Copley* v. *O'Neil*, 1 Lans., 214; *Wilcox* v. *Smith*, 26 Barb., 318.) Defendant could not be authorized or permitted to commit the waste by parol. (2 R. S. [Edm. ed.], § 1, [marg. page] 334; *Hughes' Minor's appeal*, 53 Penn. St., 500; *McGregor* v. *Brown*, 10 N. Y., 114.) A guardian cannot, by his contract, bind the person or estate of his ward. (*Forster* v. *Fuller*, 6 Mass., 58; *Jones* v. *Brewer*, 1 Pick., 314, 316; *Payne* v. *Stone*, 7 Sm. & M., 367; *Putnam* v. *Ritchie*, 6 Paige, 390; 1 Lans., 217; *Brosswell* v. *Downs*, 11 Fla., 62.) Although defendant committed the waste as administrator of plaintiff's father's estate, he could not be discharged without consideration therefor. (*Clapp* v. *Neserole*, 38 Barb., 661–664; *Weightman's appeal*, 28 Penn. St., 376;

*Clark* v. *Brockway*, 3 Keyes, 13 ; *Bishop* v. *Church*, 3 Atk., 691 ; *Rogers* v. *Rogers*, 3 Wend., 503 ; *Dudley* v. *Griswold*, 2 Bradf., 24 ; *Williams* v. *Purdy*, 6 Paige, 166 ; 8 id., 152.) This action being one in tort defendant could not, on the trial, show by way of defence at law a counter-claim or set-off, even if he had pleaded it. (*Patterson* v. *Richards,* 22 Barb., 146 ; *Drake* v. *Cockraft*, 10 How., 377 ; *Schoonderback* v. *Worth,* 8 Abb., 37 ; 20 N. Y., 281 ; 10 Abb., 206 ; 25 How., 593 ; *Dobson* v. *Pierce*, 12 N. Y., 166.)

GROVER, J.   Upon the death of the father of the respondent his mother became his guardian, with the rights, powers and duties of a guardian in socage.   But this conferred upon her no power to commit waste, by cutting and removing timber from his land, except for necessary repairs of buildings, etc.   (2 Stat. at Large, 159, § 20 ; McPherson on Infancy, 290, 300–303.)   The assent of the mother to such cutting and removing by the defendant did not constitute a defence to the action by the plaintiff against him therefor.   In 1867, the mother, then Mrs. Wiborn, was, upon the application of the plaintiff, then upward of fourteen years of age, duly appointed guardian for him by the surrogate.   Section 10 of the act confers upon the guardian so appointed, the same powers as a testamentary guardian.   Section 3 of the act prescribes the powers and duties of the latter, and, among other things, provides that he may bring such actions in relation to the real and personal estate of the ward as a guardian in socage might by law.   A guardian in socage could maintain actions for injuries to the real and personal estate of the ward. (*Byrne* v. *Van Hoesen*, 5 J. R., 66; *Holmes* v. *Seely*, 17 Wend., 75 ; *Beecher* v. *Crouse*, 19 id., 306.)   Having the duty to take into custody the property of the ward and manage the same, and protect it for his benefit, the law gives him all the necessary legal remedies to accomplish these purposes.

After the appointment of the mother as guardian she executed to the defendant a release, under seal, as such guardian, of the claim in question, which was set up in the answer as a

defence to the action, and which the defendant offered in evidence upon the trial. This was excluded by the court upon the ground that there was no proof that the claim was settled so as to bind the infant, and no proof of his subsequent ratification, and that it did not appear that he received any benefit from the settlement. The guardian having a right of action in her own name, while she so continued, for the injury, clearly had the right, acting in good faith, to release and discharge the claim upon a sufficient consideration. The opinion at General Term shows that this ruling of the trial judge was sustained by that court for the reason that the release was given without consideration — that nothing was paid by the defendant. There was no evidence given in respect to the consideration. At common law a seal was evidence of a sufficient consideration, and was held conclusive in this respect. This has been modified by statute (§ 97, 2 R. S., 406), providing that in actions and set-offs founded upon sealed instruments the seal shall only be presumptive evidence of a sufficient consideration. The instrument in question is not included in the statute, as no action or set-off was or could be founded thereon. The seal was sufficient evidence of a consideration. (2 Kent, 464.) The guardian having executed a release of the claim, under seal, it was *prima facie* valid, and should have been received in evidence. Besides, the instrument recites that there were mutual claims in behalf of the estate represented by the guardian against the defendant, and demands in his favor against the estate, and that all these claims were settled and canceled; and the release was mutual by each party to the other of all these claims. This settlement and release may have been highly beneficial to the ward. If fairly made, free from fraud, it was binding upon the ward upon his becoming of age. If the plaintiff claimed it was otherwise, the burden of impeaching it was upon him, and he should have shown upon the trial that it was not made in good faith, but in fraud of his rights.

The rejection by the trial court of this release, in the

Opinion of the Court, per Grover, J.

absence of all evidence tending to impeach it, requires a reversal of the judgment and a new trial; but as the question whether it was competent for the defendant to prove in mitigation of damages that the proceeds of the timber had been applied in part to the payment of taxes assessed upon the real estate of the plaintiff, and in part to the payment of debts against his estate, this question should be determined.

We have seen that the defendant was liable as a trespasser for cutting the timber. A trespasser cannot mitigate the damages by an offer to return the property to its owner; but if the owner accept the property, or otherwise regains possession of it, it may be proved for that purpose, as in that case he is not deprived of his property. The inquiry is, what is the amount of damage sustained by the plaintiff from the wrongful act of the defendant. But to warrant this evidence the property must be received by the plaintiff or applied to his use with his assent. The law will not permit a wrong-doer to take the property of another and apply the same to his use without his assent; and, if so applied, the damages recoverable for the injury will not be thereby affected. When the owner voluntarily receives the proceeds of the property wrongfully taken, or directs or assents to their application to his use, such facts may be shown in mitigation, the same as the receipt or application of the identical property taken by the trespasser. The fact that the defendant was administrator of the estate of the plaintiff's father is wholly immaterial in this action, as he had nothing in that character to do with his real estate, unless it became necessary to sell or mortgage it for the payment of the debts of the intestate.

The further facts, that the defendant was the father of the plaintiff's mother and that she was at the time of the death of his father under twenty-one years of age, can have no effect upon the legal rights of the parties. We have seen that, had the plaintiff been capable of contracting for himself and had received from the defendant the proceeds of the timber, or the same had been, with his assent, applied to

his use, these facts might have been shown in mitigation of damages. But the plaintiff was not so capable. His mother was, before her appointment as his guardian by the surrogate, guardian for him, by statute, with the powers of a guardian in socage (1 R. S., 718, § 5); as such she was authorized to recover damages for, or reclaim and dispose of timber wrongfully cut upon his land. She had the right to receive for his benefit the proceeds of any timber so cut. It would follow that if she so received such proceeds, or directed or assented to the application thereof to his benefit or that of his estate, the facts may be proved in mitigation of damages. The assent of the guardian, under the circumstances, has the same effect as that of the plaintiff would have had had he been *sui juris.*

The judgment appealed from must be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.