## GREGORY, ADMINISTRATRIX, v. ARMS.

[No. 7,932.   Filed November 1, 1911.]

1. VENDOR AND PURCHASER.—*Liens.*—*Purchase of Land Subject to.* —*Presumptions.*—*Suretyship.*—One taking a deed "subject to all liens," does not become personally liable to pay such liens; but the land thereafter constitutes the primary fund from which such liens are to be paid, the presumption being that the amount of the liens was deducted from the purchase price.   p. 567.

2. VENDOR AND PURCHASER.—*Liens.*—*Agreements to Pay.*—*Liability.*—A purchaser who accepts a deed containing a promise to pay existing liens becomes personally liable for the payment of such liens. p. 568.

3. VENDOR AND PURCHASER.—*Assumption of Payment of Liens.*—*Suretyship.*—Where a purchaser buys land encumbered by a mortgage, agreeing to pay such mortgage, the mortgagee, unless he has assented to such arrangement, may treat both the mortgagor and the purchaser as principal debtors; but the land constitutes the primary fund for the payment of the mortgage, and a personal judgment for the residue only may be taken. p. 568.

4. VENDOR AND PURCHASER.—*Covenants in Prior Deeds.*—*Effect.*—*Presumptions.*—A purchaser is bound by the terms of covenants contained in prior deeds to the lands purchased; and he is presumed to know thereof. p. 569.

5. VENDOR AND PURCHASER.—*Covenants in Prior Deeds.*—*Effect.*—A purchaser whose vendor agreed in his deed to accept the deed to the land in question, "subject to all liens," is bound thereby, though no mention is made in his deed of one of such liens. p. 569.

6. SUBROGATION.—*Sureties.*—*Vendor and Purchaser.*—*Liens.*—If a mortgagor is primarily liable for the payment of his mortgage, he cannot be subrogated to the rights of the mortgagee; but where he has conveyed the land to a grantee who has agreed to pay the lien, such mortgagor is subrogated, upon payment of the mortgage, to the rights of the mortgagee in the enforcement of the lien against the land. p. 569.

7. VENDOR AND PURCHASER.—*Prior Liens.*—*Assumption of Payment of.*—*Evidence.*—Where the deed of a grantee's remote grantor provided that the land was sold for a consideration of $1, and "subject to all liens," the stated consideration for the deed to the grantee, made on the same day, being $5,000, an existing lien thereon for $3,500 being specifically assumed as a part of the purchase price in such last deed, such facts tend to show that an existing mortgage for $500 was assumed by the grantee of such remote grantor. p. 570.

8. VENDOR AND PURCHASER.—*Liens.*—*Specific Mention of One and Omission of Another.*—*Evidence.*—A deed conveying land encumbered by two mortgages, specifically naming one to be assumed for payment by the purchaser, tends to show that such vendor considered himself liable as a principal for the payment of the other mortgage for which he was liable under the provisions of his. deed. p. 571.

9. VENDOR AND PURCHASER.—*Recorded Deeds.*—*Liens.*—*Notice.*—A deed duly recorded containing a provision that the land is conveyed "subject to all liens," constitutes notice thereof to all

subsequent purchasers, and is binding upon them, making such land the primary source of funds for the payment of such liens. p. 571.

10. SUBROGATION.—*Vendor and Purchaser.—Liens.—Deeds.—Principal and Surety.—Answer.*—In a suit by the personal representative of defendant's remote grantor, to recover the amount of a lien upon defendant's land, paid by such representative, an answer that such lien constituted the individual debt of decedent, that it continued his debt until his death, and that the debt was fully paid by such representative before the bringing of the suit, is insufficient where the complaint alleged that the deed from decedent was executed "subject to all liens," of which the lien in question was one, such answer failing to show that decedent was primarily liable as a principal.   p. 571.

11. SUBROGATION.— *Vendor and Purchaser.— Liens.— Deeds.—Answer.—Evidence.*—In a suit by a remote grantor's personal representative to recover the amount of a lien upon defendant's real estate, paid by such representative, an answer that such decedent as a part consideration for his conveyance to the defendant's grantor orally agreed to pay such lien, and that he and the plaintiff subsequently paid it, is sufficient, though there was a provision in the deed from decedent that the land was conveyed "subject to all liens," oral evidence being admissible to show the real consideration.   p. 572.

12. VENDOR AND PURCHASER.—*Liens.— Payment.—Consideration.*— A vendor who had mortgaged his land, afterwards conveying it, orally agreeing to pay such mortgage, is not a surety in the payment of the mortgage, but a principal; and the consideration for his original mortgage is sufficient to support the subsequent agreement to pay such mortgage, where he and his grantee mutually agree in determining the purchase price that the mortgage shall be paid by such vendor.   p. 574.

13. SUBROGATION.—*Vendor and Purchaser.—Liens.—Forbearance to Sue.—Consideration.—Answer.*—In a suit by the personal representative of a remote vendor for subrogation to the rights of a mortgagee of defendant's lands, the complaint alleging that such remote vendor's deed contained a provision that the land was conveyed "subject to all liens," an answer that the defendant accepted his deed upon the representation that the specific mortgage assumed was the only lien against the land, that he believed such representation, being ignorant of another mortgage thereon, that when he learned of the other mortgage he called upon such remote vendor and threatened to institute an action against defendant's vendor, that as a settlement thereof such remote vendor agreed to pay such mortgage, and that pursuant thereto, he paid interest thereon, and after his death, his admin-

istratrix paid it, is sufficient, such agreement being supported by a consideration, since he might have become liable, having acknowledged that he was primarily liable for the debt. pp. 574, 577.

14. FRAUDS, STATUTE OF.—*Contracts.— Surety.—Vendor and Purchaser*.—Where a mortgagor conveys the lands in question "subject to all liens," and his grantee conveys such lands to the defendant, making no mention of the mortgage in question, such mortgagor's promise to the defendant to pay such mortgage is not a promise to pay the debt of another, and, therefore, is not within the statute of frauds. pp. 575, 577.

15. CONTRACTS.—*Consideration.—Value of.*—Where parties agree to a consideration of indeterminate value for their contract, the courts will uphold the contract. p. 575.

16. SUBROGATION.— *Vendor and Purchaser.— Liens.— Agreements to Pay.—Consideration.—Answer.*—Where a mortgagor conveys the mortgaged lands "subject to all liens," and his grantee conveys without mentioning such mortgage in his deed and such mortgagor and his personal representative are compelled to pay such mortgage, an answer, in a suit by such representative for subrogation to the rights of the mortgagee, that the defendant demanded that such mortgagor pay the debt, that he was financially embarrassed and could not pay it, but promised that if time for payment were extended by the mortgagee—the State of Indiana—he would pay it, and that defendant granted such extension, is bad, since the defendant was powerless to grant such an extension. p. 577.

17. PLEADING.—*Overruling Demurrer to Insufficient Paragraph of Answer.—Appeal.*—The overruling of a demurrer to an insufficient paragraph of answer constitutes reversible error, where the finding for defendant was general; and the court on appeal will not examine the evidence to determine whether such ruling was harmless. *McFadden* v. *Schroeder*, 9 Ind. App. 49, overruled. pp. 577, 578, 582.

18. APPEAL.—*Harmless Error.*—Where an error is shown affirmatively to have been harmless, the judgment will not be disturbed. pp. 578, 581.

From Warren Circuit Court; *James T. Saunderson*, Judge.

Suit by Lila F. Gregory, as administratrix of the estate of John Gregory, deceased, against Azro A. Arms. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Victor H. Ringer* and *Edwin F. McCabe,* for appellant.

*William B. Durborrow,* for appellee.

FELT, P. J.—Suit by appellant against appellee, for sub-rogation to the rights of the State of Indiana under a school-fund mortgage executed by appellant's decedent, John Gregory, and to enforce the lien thereof against the real estate described therein and owned by appellee.

Omitting the formal parts of the complaint, it, in substance, alleges that on April 12, 1884, John, Hannah E. and Benjamin R. Gregory were the owners in fee simple, as tenants in common, of eighty acres of real estate in Warren county, Indiana; that on November 29, 1884, said John Gregory executed to the State of Indiana his note for $500, due on or before December 1, 1889; that, to secure said note, all the aforesaid owners of said real estate duly executed a mortgage thereon to the State of Indiana; that it was duly recorded within the time required by the law; that on November 25, 1889, said John Gregory, his wife Lila joining him, and Hannah Gregory, by deed of general warranty, duly executed, conveyed to said Benjamin R. Gregory "for the sum of $1," the undivided two-thirds part of 200 acres of real estate in said county, including the 80 acres so mortgaged as aforesaid; that said conveyance was made subject to all liens and charges now existing thereon, and especially subject to a mortgage for $3,500, due to William C. Smith, which mortgage said Benjamin R. Gregory agreed to pay; that said deed was duly accepted by the grantee, and duly recorded on November 26, 1889, in the recorder's office of said Warren county; that on November 25, 1889, said Benjamin R. Gregory and wife, by warranty deed, duly executed, conveyed said real estate, including the 80 acres aforesaid, to appellee, for a consideration of $5,000, and the deed was duly recorded within the time allowed by law; that on December 2, 1896, said Benjamin R. Gregory died, and his estate has not been administered on; that on November 7, 1908, John Gregory, appellant's decedent, died; that the auditor of said county, on July 21, 1909, filed a verified claim against the estate of said John Gregory, deceased, for

the collection of said note for $500, which claim was disallowed by the administratrix; that upon a trial on March 17, 1910, said claim was allowed by the court in the sum of $682.50, which amount appellant paid, and thereafter instituted this suit.

Appellee answered by a general denial, and by several paragraphs of affirmative answer, to the sixth, seventh, eighth and ninth of which demurrers were overruled, and the rulings thereon are here assigned as errors; also the overruling of appellant's motion for a new trial.

The first question arising under the assignment of errors relates to the legal effect of the language employed in the deed from John Gregory and others to Benjamin R. Gregory.

The mortgage for $3,500, especially mentioned, seems to have covered all the 200 acres conveyed by the deed, but was junior to the mortgage for $500, to the State of Indiana, on the 80 acres included in the conveyance; but the latter mortgage was not mentioned in the deed, except as it was covered by the general clause, "subject to all liens," etc.

The position of appellee is that since the note for $500, was the individual obligation of John Gregory, the conveyance by him to Benjamin R. Gregory, subject to existing liens, did not change the character of his obligation, but he was, after as well as before the execution of the deed, primarily liable for the debt as principal.

The contention of appellant is that such conveyance, *ipso facto,* made the real estate the primary source of funds for the payment of the mortgage debt, and that John Gregory therefter occupied the position of surety, instead of principal, as originally, and up to the time of the conveyance, and that appellee, as grantee of Benjamin R. Gregory, took the real estate charged with such primary liability for the payment of the mortgage.

Where a person takes a deed to real estate subject to encumbrances thereon, he does not thereby become personally liable to discharge the preëxisting liens, but, in the absence

of any showing to the contrary, the purchaser is deemed to have deducted the amount of the prior encumbrances from the purchase price, and the land in his hands becomes the primary source of funds out of which the encumbrances are to be paid. *State, ex rel.*, v. *Davis* (1884), 96 Ind. 539; *Bunch* v. *Grave* (1887), 111 Ind. 351, 355; *Atherton* v. *Toney* (1873), 43 Ind. 211, 213; *Hancock* v. *Wiggins* (1902), 28 Ind. App. 449; *Burns* v. *Gavin* (1889), 118 Ind. 320, 322; *Myers* v. *O'Neal* (1892), 130 Ind. 370, 373; *Green* v. *McCord* (1903), 30 Ind. App. 470; *Kostenbader* v. *Spotts* (1876), 80 Pa. St. 430, 433; *Gerdine* v. *Menage* (1889), 41 Minn. 417, 420; *Drury* v. *Holden* (1887), 121 Ill. 130, 137; *Manwaring* v. *Powell* (1879), 40 Mich. 371, 374.

While one who accepts a deed conveying to him real estate subject to a mortgage does not thereby render himself personally liable for the payment of the debt, yet

2. if the purchaser assumes the payment of the mortgage debt he thereby makes himself personally liable. In both instances, however, the purchaser takes the land charged with the payment of the debt, and it remains the primary source of funds for the payment of the mortgage as between the purchaser and the mortgagee.

If the purchaser assumes the mortgage, he becomes, as to the mortgagor, the principal debtor, and the mortgagor becomes the surety; but the mortgagee, unless he has as-

3. sented to such an arrangement may treat both as principal debtors, and may take a personal judgment against each of them in addition to his decree of foreclosure. If, however, the conveyance is made subject to the mortgage, upon foreclosure the purchaser of the land, while not liable personally, cannot prevent the real estate from being first exhausted to pay the mortgage debt, and the mortgagor will only be liable on the personal judgment against him for the amount, if any, remaining due on the judgment after the real estate has been exhausted. *Hancock* v. *Fleming* (1885), 103 Ind. 533; *Adams* v. *Wheeler*

(1890), 122 Ind. 251, 253; *Stuckman* v. *Roose* (1897), 147 Ind. 402, 407; *Baltes Land, etc., Co.* v. *Sulton* (1900), 25 Ind. App. 695; *Oglebay* v. *Todd* (1906), 166 Ind. 250; *State, ex rel.,* v. *Davis* (1884), 96 Ind. 539; Sheldon, Subrogation (2d ed.) §§11, 26, 85; 1 Jones, Mortgages (6th ed.) §§736, 738, 741; *Cherry* v. *Monro* (1848), 2 Barb. Ch. (N. Y.) 618; *Hopkins* v. *Wolley* (1880), 81 N. Y. 77; *Wilbur* v. *Warren's Estate* (1887), 104 N. Y. 192, 197; *Calvo* v. *Davies* (1878), 73 N. Y. 211, 29 Am. Rep. 130; *Johnson* v. *Thompson* (1880), 129 Mass. 398; *Hermanns* v. *Fanning* (1890), 151 Mass. 1, 23 N. E. 493; *Moore's Appeal* (1879), 88 Pa. St. 450, 452, 32 Am. Rep. 469.

The deed to appellee contained no provision referring to encumbrances, except as to the mortgage for $3,500; but a purchaser is bound by the recitals in the prior

4. deeds, which constitute his chain of title, and he is presumed to have examined the records of deeds, necessary to make out such a chain of title. *Oglebay* v. *Todd, supra; Lowry* v. *Smith* (1884), 97 Ind. 466; *Brannon* v. *May* (1873), 42 Ind. 92; 1 Jones, Mortgages (6th ed.) §740.

On the foregoing authority, it is clear that appellee is bound by the clause in the deed from John Gregory and others to Benjamin R. Gregory, his immediate grant-

5. or, relative to existing liens, though the deed to appellee was not made subject to any lien or encumbrance, except the mortgage for $3,500.

If appellant, as the legal representative of John Gregory, deceased, in paying the debt evidenced by the note and mortgage in controversy, discharged an obligation for

6. which decedent was primarily liable, there can be no subrogation. If, however, decedent was only secondarily liable as surety, and appellant paid the debt after due allowance and adjudication by the court, the payment was not voluntary, and appellant's right of subrogation was made out, and the enforcement of the lien of the school-

fund mortgage against appellee's real estate would be fully warranted. *Warford* v. *Hankins* (1898), 150 Ind. 489; *Begein* v. *Brehm* (1890), 123 Ind. 160, 166; *Josselyn* v. *Edwards* (1877), 57 Ind. 212; *Rardin* v. *Walpole* (1871), 38 Ind. 146; Sheldon, Subrogation (2d ed.) §§11, 26; 1 Jones, Mortgages (6th ed.) §§740, 741.

The foregoing propositions enter largely into the consideration of the questions arising on the demurrers to the several paragraphs of special answer. In determining the sufficiency of the answers, it is necessary to keep in view the peculiar provisions of the deed from John Gregory and others to Benjamin R. Gregory, and the facts disclosed by the complaint.

The note for $500 was executed by John Gregory alone, but the mortgage securing it was executed on eighty acres of real estate owned jointly by the maker of the note, Benjamin R. Gregory and Hannah E. Gregory. The note, by its terms, was due December 1, 1889, and on November 25, 1889, John Gregory and wife and Hannah E. Gregory conveyed to Benjamin R. Gregory their undivided two-thirds interest in 200 acres of real estate, including the aforesaid 80 acres, for a named consideration of $1, "subject to all liens and charges" existing thereon, and provided that such land was especially subject to a mortgage for $3,500, which, by the terms of the deed, the grantee agreed to pay.

On the same day, Benjamin R. Gregory, by warranty deed, conveyed the same real estate to appellee, for a consideration of $5,000, subject only to the mortgage for $3,500.

The named consideration of $1 in the deed from John Gregory and others tends to support the proposition that it was intended that the land should be primarily liable for all encumbrances thereon, including the mortgage for $500. This is to some extent supported by the fact that on the same day Benjamin R. Gregory conveyed the real estate to appellee for $5,000, subject only to the mortgage for $3,500,

thus showing an apparent difference of $1,500 in the consideration of the two deeds. On the other hand, the following undisputed facts tend to support the proposition that the grantor, John Gregory, at the time of and subsequent to the conveyance by him, remained primarily liable for the mortgage for $500: The provision requiring the grantee to pay $3,500; the failure specifically to mention the smaller mortgage and to provide for its payment; the fact that originally he alone executed the note, while others joined in a mortgage upon their joint property for its security, and the fact that the deed from John Gregory and others was for their individual two-thirds interest in 200 acres of real estate to the owner of the other moiety, which conveyance included the 80 acres covered by the mortgage for $500.

However, in these observations, we are not to lose sight of the fundamental proposition that a conveyance subject to existing liens, where the deeds are duly recorded within the time provided by law, charges the grantee with notice of all that is shown by the record, including the recitals in the deeds, and that such conveyance makes the real estate the primary source of funds for the payment and satisfaction of such encumbrance.

The sixth paragraph of answer admits the execution of the note and mortgage as alleged, but avers that at the time of the execution of the note the debt was the individual debt of appellant's decedent, and it continued to be his individual debt until the date of his death; that the debt was fully paid by appellant before bringing this suit, and that such payment fully satisfied said mortgage. The principal objection urged against this paragraph is that the averment that the debt at all times remained the debt of decedent, John Gregory, is a mere conclusion of the pleader, unsupported by the averment of facts from which such conclusion can be drawn.

As already shown, the language of the deed—"subject to

all liens and charges now existing thereon"—is sufficient in law to make the real estate the primary source of funds for the payment of the mortgage for $500, and to place John Gregory in the situation of surety as to that obligation, as against the land or appellee.

To constitute a good answer in this case, facts must be alleged that in some way meet or avoid the language of the deed, the effect of which is as before stated. The statement that the debt remained the individual debt of John Gregory after the execution of his deed, whether considered as a conclusion or as the averment of an ultimate fact, is insufficient to overcome the presumption that the grantee has reserved out of the consideration the amount of the mortgage. In any event, the obligation remained the individual debt of John Gregory until paid, the only effect of the deed being to change him from the position of principal to that of surety as against the grantee and the mortgaged premises. For failure to aver facts showing that John Gregory was primarily liable as principal after the execution of the deed, the sixth paragraph is insufficient as an answer to the complaint. *Weir* v. *State, ex rel.* (1903), 161 Ind. 435; *Davis* v. *Clements* (1897), 148 Ind. 605; *Grand Lodge, etc.,* v. *Hall* (1903), 31 Ind. App. 107.

The general averments of the seventh, eighth and ninth paragraphs of answer are substantially the same.

The seventh paragraph admits the facts averred in the complaint as to the ownership and conveyance of the real estate, and the execution of the note and mortgage for $500. It is therein further averred that at and before the time of the conveyance of said real estate to Benjamin R. Gregory by John Gregory and others, "it was stipulated and agreed among and between them that the mortgage on said land as aforesaid, * * * and said note for $500, executed individually by John Gregory to the State of Indiana, was to be, continue and remain the individual debt and liability of said John Gregory, and that

said note together with accrued and accruing interest, was to be paid to the State  *  *  *  by said John Gregory, and that said Benjamin R. Gregory and his subsequent grantees of said land were at all times to be protected from the lien of said mortgage and foreclosure thereof;'' that, relying on said promise of John Gregory, said Benjamin R. Gregory accepted said deed as averred in the complaint; that, in pursuance of said agreement, said John Gregory, after the execution of said deed, made payments of interest on said mortgage as follows:   December 10, 1890, $40; April 15, 1892, $40; December 3, 1898, $237.34; February 27, 1903, $30; February 17, 1905, $60; December 18, 1906, $60; that on December 23, 1910, appellant paid the full amount due on said mortgage; that appellee is, and has been since November 25, 1889, the owner and in possession of the aforesaid real estate; that the indebtedness evidenced by said mortgage was at all times the debt of appellant's decedent, and of no other person, and the payment thereof, as alleged before the bringing of this suit, was in full satisfaction of said note and mortgage, and appellant should not be subrogated to the rights of the State thereunder. and should take nothing by reason of such payment.

The insufficiency of the seventh paragraph of answer is urged, on the ground that it is an attempt to vary or modify a written instrument by a parol agreement; that there is no consideration shown for the alleged promise of John Gregory to pay the debt, and that the alleged payments of interest were purely voluntary.   The gist of this paragraph of answer is that at the time of the execution of the deed to Benjamin R. Gregory it was agreed by John Gregory that the note for $500, signed by him alone, was to be his individual debt, that he would pay it in full, and cause the mortgage to be satisfied; that, in pursuance of such agreement, he did pay interest as therein set out, and after his death his administratrix paid the debt in full.   This shows an agreement, at the time of the execution of the deed, re-

lating to the consideration, and it is the law, sustained by repeated decisions of our courts of last resort, that the real consideration may be shown by parol evidence, although different from that stated in the deed.

Where there is an agreement between the grantor and grantee, made at or before the time of the execution of the deed as to the payment of an encumbrance, though not expressed in the instrument, it may be proved by parol. *McDill* v. *Gunn* (1873), 43 Ind. 315, 319; *Pickett* v. *Green* (1889), 120 Ind. 584, 588; *Bever* v. *Bever* (1896), 144 Ind. 157, 162.

The consideration moving to John Gregory when he executed his note is sufficient to support his agreement to pay such mortgage; and if, as the answer shows, in agreeing upon the consideration for the conveyance of the real estate, it was mutually arranged that he should pay the note for which he was already liable, his payments of interest or principal, in pursuance of such an agreement, would not be voluntary, but in the discharge of an existing obligation.

The court did not err in overruling the demurrer to the seventh paragraph of answer.

The eighth paragraph of answer shows that at and before the time appellee accepted the deed from Benjamin R. Gregory, the latter represented to him that the land was clear of encumbrance, except the mortgage for $3,500; that he relied upon these representations and believed them to be true, and did not know of the mortgage for $500 until after he had accepted the deed for the land; that when he learned of the existence of the mortgage he demanded of John Gregory that he pay and discharge it; that said John Gregory then and there promised to pay the mortgage if appellee would not institute any suit against his brother, said Benjamin R. Gregory, for breach of his warranty or for fraud in the sale of said land, as the debt was his individual debt; that appellee relied upon said promise, and

forebore bringing any suits against Benjamin R. Gregory; that, in pursuance of said agreement, said John Gregory paid interest on said debt, and after his death it was paid in full by his administratrix.

It is urged that if the promise on the part of John Gregory was an agreement to pay the debt of another, and was not shown to be in writing, it is within the statute of frauds and void; that no consideration is shown, and the answer is not good as an estoppel, because all the facts were equally known to both parties.

While the effect of the conveyance by John Gregory to Benjamin R. Gregory was to make the land the primary source of funds out of which to pay the mortgage, 14. John Gregory remained liable as surety, as between himself and appellee or the land, but the mortgagee was at all times entitled to a personal judgment against him upon default of payment, and was not affected by the rights existing between the mortgagor and his immediate or remote grantee. John Gregory's promise to pay the mortgage debt, if appellee would refrain from bringing suit, was but a promise to pay a debt for which he was already liable. Such promise is not within the statute. *Lowe* v. *Hamilton* (1892), 132 Ind. 406, 409; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 683, 37 L. R. A. 233; *McDill* v. *Gunn* (1873), 43 Ind. 315, 319; *Boruff* v. *Hudson* (1894), 138 Ind. 280, 283; *Wolke* v. *Fleming* (1885), 103 Ind. 105, 107, 53 Am. Rep. 495.

The question of want of consideration turns upon the sufficiency of appellee's alleged promise of forbearance and its performance. It is not alleged that suit was threatened, or that appellee had paid or offered to pay the mortgage.

It appears from the pleading, however, that appellee accepted the deed, not knowing of the mortgage, relying upon representations of his grantor, who conveyed by statutory warranty deed; that the debt was the personal obligation of John Gregory, and that appellee's right of action, if not

complete, was within his own keeping, and could be made complete by payment of the mortgage; that, in addition to preventing suit against his brother, John Gregory had a personal interest in warding off litigation, as he might be brought into the controversy in some way, owing to his acknowledgment that he was primarily liable for the debt.

In 6 Am. and Eng. Ency. Law (2d ed.) 748, it is said: "Forbearance to sue upon any legal demand is a valuable consideration for a promise either by the party liable or by a third party." In the same volume it is said: "If both parties *bona fide* believe that the plaintiff's demand is just, his forbearance will be a valuable consideration." 6 Am. and Eng. Ency. Law (2d ed.) 742.

In the case of *Cornell* v. *Central Electric Co.* (1895), 61 Ill. App. 325, on page 327, it is said: "Nor is it material that the certain right to recover in the suit forborne should exist. If the right were honestly asserted, though a doubtful one, the agreement to forbear its prosecution is based upon a sufficient consideration." See, also, *Honeyman* v. *Jarvis* (1875), 79 Ill. 318; *Knotts* v. *Preble* (1869), 50 Ill. 226, 99 Am. Dec. 514.

Anything is a valuable consideration for a contract that is of advantage to the one or of disadvantage to the other. Where parties agree to a consideration of indeterminate value, the courts will not substitute their judgment for that of the parties, but will uphold the contract. *Ditmar* v. *West* (1893), 7 Ind. App. 637; *Donahoe* v. *Rich* (1891), 2 Ind. App. 540, 546; *Johnson* v. *Staley* (1894), 32 Ind. App. 628; *Coffin* v. *Trustees, etc.* (1883), 92 Ind. 337, 341; *Wills* v. *Ross* (1881), 77 Ind. 1, 40 Am. Rep. 279; *Giles* v. *Ackles* (1848), 9 Pa. St. 147, 49 Am. Dec. 551; *Pearsell Mfg. Co.* v. *Jeffreys* (1904), 183 Mo. 386, 81 S. W. 901,105 Am. St. 496.

The agreement was not one required to be in writing, and was supported by a consideration recognized by the law as sufficient, and, as applied to this particular case, is strengthened by the averment that both parties acted on it for years;

the one by forbearance and the other by repeated payments of interest. The answer was sufficient to withstand the demurrer.

The sufficiency of the ninth paragraph of answer must be determined from the averments that show that when appellee demanded payment of the mortgage, John Gregory was financially embarrassed and unable to pay the debt; that he promised appellee that if he would grant him an extension of time he would pay the interest on the note as it accrued, and would pay the note in full and obtain a release of the mortgage; that appellee relied upon said agreement, and granted the extension for the benefit of said John Gregory, who paid the interest thereon.

The principal objections urged against this paragraph are that there was no contractual relation of any kind or character between John Gregory and appellee, the mortgagee being the State of Indiana; that appellee had no power to grant an extension of time for the payment of the debt; and that the alleged agreement is therefore a want of consideration. It is fundamental that a person must have it in his power to do the thing he undertakes to do to make his promise sufficient as a consideration. Appellee being powerless to grant an extension of time on the mortgage debt for the State of Indiana, the mortgagee, his alleged agreement to extend the time of payment was without consideration. The answer was therefore insufficient, and it was error to overrule the demurrer thereto.

The court made a general finding for defendant, and rendered judgment accordingly, from which plaintiff appealed. The ruling on the demurrers to the sixth and ninth paragraphs of appellee's answer being erroneous, the question arises whether we may ascertain from the record that such errors were harmless. Has the court the right, or is it its duty, to look to the evidence to ascertain whether the overruling of the demurrer to an insufficient answer was harmless error?

Some apparent confusion exists in the decided cases, owing largely to a failure to observe the distinction between the sustaining of a demurrer to a good answer where there are other good paragraphs under which the same evidence is admissible, and such error on appeal is assigned by the answering defendant, and a case like this one, where the error consists in overruling demurrers to insufficient paragraphs of answer, and the judgment rests on a general finding for defendant.

In the case of *Norris* v. *Tice* (1895), 13 Ind App. 17, this court, by Reinhard, J., on page 21, said: "The decided cases establish the rule in this State that it is harmful error to overrule a demurrer to a bad paragraph of answer, even if the same facts could have been proved under another paragraph which is good. The ruling of the court upholding the bad pleading is a judicial declaration that the defense therein pleaded is sufficient to bar the action, if proved, and such a ruling is equivalent to the establishment of a theory unjustly cutting off the plaintiff from his rights. There is a marked difference between overruling a demurrer to a bad answer and sustaining a demurrer to a good answer, the failure to observe which has led to great confusion in the decisions."

It frequently has been stated in general terms that an error will be adjudged harmless, where it affirmatively appears from the record that it resulted in no harm to the party against whom it was committed. Elliott, App. Proc. §637.

But this general rule does not necessarily mean that an appellate tribunal should, or may, examine the evidence to determine the effect on the complaining party of the erroneous ruling.

In the case of *Ryan* v. *Hurley* (1889), 119 Ind. 115, 117, our Supreme Court, in discussing the question where there were several paragraphs of complaint, all held good below and part held to be insufficient on appeal, said: "The find-

ing of the court is general, and it cannot be determined from the finding whether it is based upon the good or bad paragraph. It repeatedly has been held by this court that we cannot look into the evidence and be governed by it in affirming or reversing a judgment for error committed in ruling on a demurrer to a complaint. The complaint must stand on its own merits, and if there is error in overruling a demurrer to it the case must be reversed. We cannot look into the evidence to determine whether injury did or did not result from such error. *Pennsylvania Co.* v. *Poor* [1885], 103 Ind. 553; *Pennsylvania Co.* v. *Marion* [1885], 104 Ind. 239; *Belt R., etc., Co.* v. *Mann* [1886], 107 Ind. 89.''

In the case of *Belt R., etc., Co.* v. *Mann, supra,* on page 91, Mitchell, J., said: ''Where a verdict is based upon an entire complaint, which contains two or more paragraphs, if either paragraph is bad, the judgment will be reversed. * * * In such a case, the ruling must stand or fall upon its own merits. The evidence, or the result reached, cannot be considered in determining whether the complaint was sufficient.''

In the case of *Wilson* v. *Town of Monticello* (1882), 85 Ind. 10, on page 20, Elliott, J., said: ''Where good answers are held bad on demurrer or are rejected on motion, the defendant is entitled to the benefit of the exception reserved upon that ruling, unless there are others entitling him to put in evidence substantially the same matters as are pleaded in the answers held bad or rejected. The evidence is not to be looked to for the purpose of discovering whether the ruling did or did not do him harm. Where a plea is struck down, the presumption is that the rule of law involved in the ruling was acted upon throughout the case, and the defendant is not bound to again present the question. An objection once well and fully presented, and properly and adequately reserved, does not need to be repeated at subsequent stages of the case. A defendant who receives the judgment of the court upon his answer may accept that ruling as the declara-

tion of the court that it would be useless to offer evidence under it, for if fully proved the defense set forth would not be allowed to prevail. Nor would it be just to a defendant, who has put in a valid plea, to hunt through the evidence to ascertain whether he was or was not injured, for he is entitled to the benefit of the explicit admission made by the demurrer.''

In the case of *Fleetwood* v. *Brown* (1887), 109 Ind. 567, 573, Zollars, J., in discussing cases cited to sustain the contention that the evidence may be looked to to cure an error in ruling upon a demurrer to an answer, said: ''It was not therein held, or intended to be held, that this court may look to the evidence to ascertain whether or not the sustaining of a demurrer to a good paragraph of an answer was a harmless error. It has never been so held by this court. On the contrary, the holding has been, that in such a case, the evidence is not to be looked to for the purpose of discovering whether the ruling did or did not do harm.''

Aside from general statements, the only Indiana case that seems to hold that the evidence may be, and in some cases should be, examined, even when conflicting, to determine whether an erroneous ruling upon a demurrer was or was not harmful, is that of *McFadden* v. *Schroeder* (1894), 9 Ind. App. 49. In that case the plaintiff recovered an amount much smaller than he claimed, and on appeal assigned error of the court in overruling a demurrer to a paragraph of answer, which on appeal was held insufficient. It was held that the evidence admitted under the erroneous answer went to the question of the value of the goods, and that since the jury found the value to be much less than shown by this evidence, the court was warranted in holding the error, in overruling the demurrer to the bad answer, harmless.

In Elliott, App. Proc. §638, it is said: ''It is possible that where there is absolutely no conflict in the evidence, it may be determined from an inspection of the evidence, but the doctrine certainly cannot be correctly applied in cases where

the evidence is conflicting. \* \* \* We believe that as a general rule resort to the evidence is not proper or permissible. \* \* \* There is no tinge of right in a claim that the court or the adverse party must explore the evidence to determine whether a ruling upon demurrer was or was not harmless. \* \* \* It is carrying the rule quite far enough to hold that if the record proper, as a special finding, a special verdict, or the like, affirmatively shows the harmlessness of an erroneous ruling the error will not avail the party against whom it was committed. Beyond that it cannot be carried without producing discord and working injury.''

We believe this to be a correct statement of the general rule, and it is fully sustained by the overwhelming weight of authority, and by the decisions of this court and the Supreme Court rendered both before and since the decision of the case of *McFadden* v. *Schroeder, supra.* To the extent, therefore, that the case holds that an appellate tribunal, in determining the effect of a ruling on demurrer, may, or should, look to the evidence where there is a conflict therein, or where it is of such a character that different conclusions may be drawn therefrom by reasonable minds, the case is overruled.

The following cases throw some light upon the question, and support the conclusions already announced: *McComas* v. *Haas* (1884), 93 Ind. 276; *Messick* v. *Midland R. Co.* (1891), 128 Ind. 81, 84; *Hormann* v. *Hartmetz* (1891), 128 Ind. 353; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 118, 20 L. R. A. 400; *Jackson* v. *Neal* (1894), 136 Ind. 173; *Pyle* v. *Peyton* (1896), 146 Ind. 90, 93; *Norris* v. *Tice* (1895), 13 Ind. App. 17; *Kern* v. *Saul* (1895), 14 Ind. App. 72; *Kniss* v. *Holbrook* (1896), 16 Ind. App. 229; Elliott, App. Proc. §§591, 634, 637, 638, 669.

18. The rule that an error will not be cause for reversal, where the record affirmatively shows that the error was not harmful to the complaining party, is of general application, and usually leads to salutary results.

Where it affirmatively appears that judgment rests upon a good paragraph of complaint, the fact that an insufficient paragraph may have been held good is a harmless error. Likewise, where a demurrer is sustained to a good paragraph of answer, and the same proof is admissible under another paragraph held good, such ruling constitutes harmless error, provided such paragraph requires no greater amount of proof than the good paragraph erroneously held bad.

The harmlessness of an error in passing upon a demurrer may also appear from a special finding of facts, a special verdict, or from an agreed statement of facts. But 17. when the question arises upon the overruling of a demurrer to an insufficient paragraph of answer, filed by a defendant who obtains judgment in his favor, the question is quite different, for the probability that the judgment resulted from the conception of the law which led to the erroneous ruling is so great as to suggest caution in the application of the rule. If resort is to be had to the evidence to determine that the error is harmless, it should be limited to cases where there is a total failure of evidence under the paragraph erroneously held good. If there is a conflict of evidence, or if it is of such a character that reasonable minds may draw different conclusions therefrom, the court cannot safely say, as a matter of law, that the error is harmless, and to attempt to do so will only lead to confusion and uncertainty.

A person who claims that an error is harmless should take the burden of showing it to be so; for the time required by the court to ascertain the fact, unaided by counsel, could, with more justice, be applied to the disposition of the business of other litigants awaiting the action of the court. If this is not done by counsel, the matter will, of necessity, be, to a large extent, discretionary with the court, for in many cases, even though there is a total failure of evidence under the bad paragraph, the fact is not readily ascertainable.

Applying the rule thus interpreted to this case, there

seems to be a total failure of evidence on the vital issue attempted to be presented by the ninth paragraph of answer. But when we come to the sixth paragraph, we find that, so far as it goes, it is similar to the seventh paragraph, which was held sufficient, and it is impossible for us to say that the court, in finding for defendant, did not adhere to the lower standard of the insufficient sixth paragraph, rather than to that of either of the good paragraphs of answer. In fact, it is probable that the trial court, taking into consideration the peculiar provisions of the deeds, the situation of the parties, the original obligation, the payment of interest for so long a time by John Gregory, the acquiescence of appellee in the continuation of the mortgage upon his land, without taking steps to remove it, other than his negotiations with the original obligor of the note, and other facts appearing from the evidence, concluded that the parties themselves had put a construction on the contract that the court did not feel warranted in setting aside, and therefore gave judgment accordingly. But we cannot know from the record that such was the case, for the judgment may have been rendered on the belief that the evidence supported the sixth paragraph of answer, and that alone may have been the basis of the court's conclusion.

The language of the deeds, with reference to encumbrances and the consideration, is such as to warrant a court in adopting a construction placed thereon and acted upon by the parties, if fully established by the evidence; but such possibility does not render harmless the ruling on the demurrer.

The questions of law arising on the motion for a new trial have already been decided by this opinion, and the only remaining question is the sufficiency of the evidence to support the finding and judgment. But this we need not pass upon, as the case must be reversed because of the errors in rulings upon the demurrers to the answers.

The judgment is therefore reversed, with instructions to

the lower court to sustain the motion for a new trial, to sustain the demurrers to the sixth and ninth paragraphs of answer, to permit the parties to amend their pleadings if desired, and for further proceedings not inconsistent with this opinion.